UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| HENRY L. JONES #455040, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:21-cv-00666 |
|  | ) | Judge Trauger |
| TONY MAYS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM

Henry L. Jones, an inmate on death row at Riverbend Maximum Security Institution in Nashville, Tennessee, filed this pro se civil rights action under 42 U.S.C § 1983 and paid the filing fee. The plaintiff has filed a second amended complaint (Doc. No. 23) and motion to appoint counsel. (Doc. No. 22.) The second amended complaint (Doc. No. 23) is now the operative complaint in this case, so the court will refer to it as the "complaint" going forward. The complaint is before the court for initial review under the Prison Litigation Reform Act.[1] And as explained below, the plaintiff's motion to appoint counsel will be denied at this time, but this case may proceed for further development. The plaintiff should consult the accompanying order for further instructions.

**I.  Initial Review**

The court must review and dismiss the complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915A(b) (applying

---

[1] The court appreciates the efforts of the plaintiff's state post-conviction attorney to ensure that the complaint reached the court in a timely manner. (*See* Doc. No. 24 (declaration of Kelly Gleason).) The court accepts the complaint as timely filed. (*See* Doc. No. 21 at 5 (setting effective deadline of August 9—30 days from entry of the order on July 7, plus 3 days to account for service by mail, *see* Fed. R. Civ. P. 6(d)); Doc. No. 23 at 1 (complaint stamped filed on August 9).)

standard to actions brought by prisoners against governmental officers); 42 U.S.C. § 1997e(c)(1) (applying standard to claims brought by prisoners "with respect to prison conditions"). Because the plaintiff is representing himself, the court must also liberally construe the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### A. Background

The plaintiff initiated this case by filing a complaint that did not comply with Federal Rule of Civil Procedure 8. (Doc. No. 1.) The court allowed him to address this deficiency by filing an amended complaint. (Doc. No. 7.) The plaintiff did so, but the amended complaint still did not comply with Rule 8. (Doc. No. 13.) The court, therefore, gave the plaintiff one final opportunity to file an amended complaint that complies with Rule 8.[2] (Doc. No. 21.) The resulting complaint (Doc. No. 23) is difficult to parse but sufficiently clear to pass muster under Rule 8.[3]

The complaint names six defendants: Lisa Helton, the interim commissioner of the Tennessee Department of Correction (TDOC); Tony Mays, the warden at Riverbend Maximum Security Institution (RMSI); RMSI Officer Warren Tate; RMSI Sergeant Colt Lloyd; RMSI Unit Manager Dennis Davis; and RMSI Associate Warden of Security Ernest Lewis. (*Id.* at 2–4.) The court has liberally construed the complaint to establish the following summary of factual allegations for the purpose of initial review.

On April 14, 2019, RMSI officials accused the plaintiff of committing a disciplinary infraction by participating in an assault. (*Id.* at 3.) As a result, the plaintiff has been in solitary confinement since April 15, 2019. (*Id.* at 3, 7.) The plaintiff, however, did not receive a disciplinary

---

[2] In addition to these Rule 8 issues, the Section 1915A screening in this case was delayed by resolution of the fee (Doc. No. 4) and an extension of time requested by the plaintiff. (Doc. No. 9.)

[3] The complaint is accompanied by 247 pages of supporting documentation. (Doc. Nos. 23-1, 23-2, 23-3.)

2

hearing, so he was "not found guilty of any violation/rules." (*Id.* at 7.) Indeed, the plaintiff does not have any disciplinary history. (*Id.* at 6–7.)

Each month, there is a "unit panel review hearing" regarding the plaintiff's confinement, held by Unit Manager Davis, Sgt. Lloyd, and Officer Tate. (*Id.* at 7.) The plaintiff is not allowed to attend this hearing. (*Id.*) Lloyd and Tate have "fabricated prison records" to justify keeping the plaintiff in confinement. (*Id.* at 3, 6–7.) The plaintiff has not received notice of how to leave confinement, meaningful periodic review of his placement, or a meaningful opportunity to appeal review determinations. (*Id.* at 5, 10.) Meanwhile, since the plaintiff has entered confinement, other death row inmates have received disciplinary hearings, entered confinement, and eventually been released back to death sentence general population. (*Id.* at 7.) The plaintiff alleges that his prolonged placement in solitary confinement has caused his mental health to deteriorate, such that RMSI medical staff describe him as experiencing paranoia and delusions. (*Id.* at 11.)

Sgt. Lloyd allegedly said that he would "harass [the plaintiff] until [he] commit[s] suicide[]." (*Id.* at 6, 8.) The plaintiff filed a grievance and told Unit Manager Dennis Davis about Lloyd's statement, but it was not addressed. (*Id.*) Lloyd has also given the plaintiff "unsafe meals" and placed a "sleep [deprivation] device" in a light in his cell. (*Id.* at 5–6.)

The plaintiff also alleges adverse actions by RMSI officials, as a group, including that officials "attack[ed], damage[d], broken, or destroyed" the plaintiff's personal property on a daily basis in an effort to provoke him into physical altercations. (*Id.* at 5.) Officials also allegedly hold "inappropriate homosexual conversation[s] with inmates" and "carry out homosexual stalking/gawking against" the plaintiff and other inmates. (*Id.* at 8.) When the plaintiff and other inmates refuse to participate in this behavior or report it, officials taunt them, serve them unsafe meals, and place them in solitary confinement. (*Id.* at 5–6, 8.) Officials also retaliated against the

3

plaintiff specifically by covering up incidents of other inmates spraying toxic chemicals into the plaintiff's cell. (*Id.* at 6.)

The plaintiff alleges adverse actions by non-party officials. Officer Terry Foster, for example, issued the plaintiff oatmeal with three small pieces of glass in it. (*Id.* at 7.) Officer Michael Carter aggressively bumped the plaintiff with his left shoulder. (*Id.*) Sergeant D. Castillo planted a homemade weapon near the plaintiff in an effort to set him up. (*Id.*) And Corporal Henry and Officer Tuck encouraged two other inmates (Michael Bane and Donald Middlebrooks) to spray toxic chemicals into the plaintiff's cell. (*Id.* at 8.) The plaintiff did not receive medical attention for about three hours after the spray. (*Id.*) As a result of this incident, the plaintiff suffered a range of medical issues. (*Id.*) The plaintiff alleges that RMSI officials also covered up over 10 incidents of inmates spraying toxic chemicals into the plaintiff's cell. (*Id.*)

The plaintiff alleges that he experienced these attacks for exercising his First Amendment rights. (*Id.* at 5, 9.) He also alleges that these issues have interfered with his capital case defense. (*Id.* at 9.) All of these issues went unreported and uninvestigated by RMSI officials, including Unit Manager Davis and Assistant Warden Lewis. (*Id.* at 5–6, 8.) The emotional damage caused by these incidents was covered up by a mental health doctor. (*Id.* at 8.)

### B. Legal Standard

To determine whether the complaint states a claim, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations

4

that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### C. Analysis

"There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation omitted).

#### 1. Capacity of Defendants

Before addressing the substance of the complaint, the court will clarify the capacity in which the plaintiff is suing the defendants. The complaint form has space for a plaintiff to check that a defendant is named in his individual capacity and/or official capacity. The plaintiff checked just the official-capacity box. (Doc. No. 23 at 2–4.) "However, a plaintiff's failure to explicitly state 'individual capacity' in the complaint is not necessarily fatal to" individual-capacity claims. *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). The court "employ[s] a 'course of proceedings' test to ascertain whether a § 1983 defendant was on notice that the plaintiff intended to hold him or her personally liable, notwithstanding the plaintiff's failure to provide explicit notice." *Id.* (citing *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002)). In doing so, the court analyzes "factors [such] as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint." *Goodwin v. Summit Cnty.*, 703 F. App'x 379, 382 (6th Cir. 2017) (quoting *Moore v. City of Harriman*, 272 F.3d 769, 772 n.1 (6th Cir. 2001)).

Here, the plaintiff alleges—albeit in a conclusory fashion—that all defendants were personally involved in the events giving rise to his claims. (*See* Doc. No. 23 at 5 ("Defendants

5

have been and are aware of all deprivations complained of herein, and have ordered, condoned, or been deliberately indifferent to such conduct.").) The plaintiff also does not reference any defendant's official title in the caption of the complaint. (*See id.* at 1–4 (caption stating "see attached" for defendants, with attached list of defendants including titles only when prompted by complaint form).) These factors support finding that the complaint provides sufficient notice to the defendants of their potential individual liability. *See Moore*, 272 F.3d at 773. And "[t]o the extent doubt persists that this combination of factors warrants construing the complaint as one against the defendants individually, this doubt should be resolved in [] favor [of] a pro se plaintiff." *Lindsay v. Bogle*, 92 F. App'x 165, 169 (6th Cir. 2004) (citing *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)). Accordingly, the court considers this case as being brought against the defendants in both their individual and official capacities.

### 2. Placement in Confinement

The plaintiff alleges that he has been in solitary confinement since April 15, 2019—about three years and four months at the time he filed the complaint. He asserts several claims based on this allegation, and the court will address each claim in turn.

#### i. Due Process

The plaintiff asserts a due process claim (Doc. No. 23 at 3), and as explained below, this claim may proceed for further development.

Prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). "Confinement in administrative segregation implicates an inmate's liberty interest in state-imposed discipline, protected by due process, if the confinement imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir.

6

2017) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008)). Courts consider "the nature of the more-restrictive confinement and its duration in determining whether it imposes an atypical and significant hardship." *Harden-Bey*, 524 F.3d at 793 (collecting cases) (internal quotation marks omitted). Where an inmate has a liberty interest, "prison officials must engage in some sort of periodic review while an inmate is confined in administrative segregation, and the officials' decision to continue such confinement must be supported by 'some evidence.'" *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (quoting *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012)).

Here, the duration of the plaintiff's confinement supports finding that he has a liberty interest. *See Harden-Bey*, 524 F.3d at 793 (holding that "three years and counting" in administrative segregation is a sufficient duration to affect whether a prisoner has a protected liberty interest). As for the nature of his confinement, the plaintiff does not provide many specific details of how it differs from ordinary conditions of confinement, but he does allege that it caused his mental health to deteriorate, such that RMSI medical staff now describe him as experiencing paranoia and delusions. For the purpose of initial review, the court finds these allegations sufficient to establish that the plaintiff has a liberty interest in avoiding solitary confinement.

The court, therefore, must determine if the plaintiff "received the process due to him." *Selby*, 734 F.3d at 559. Although the plaintiff acknowledges that there are monthly hearings to review his status, he alleges that these reviews are not "meaningful" because Sgt. Lloyd and Officer Tate fabricate prison records to justify the plaintiff's continued placement, and the plaintiff is not allowed to attend or appeal these reviews. The plaintiff also alleges that he did not receive a disciplinary hearing when he was initially placed in confinement in April 2019 and that he does not have any disciplinary convictions on his record. That is sufficient to plausibly allege that the

7

plaintiff is not receiving meaningful periodic review of his placement and that his continued confinement is not supported by "some evidence." *See Selby*, 734 F.3d at 559.

The plaintiff, accordingly, may proceed with a due process claim based on his placement in solitary confinement since April 15, 2019. Because the plaintiff alleges that Sgt. Lloyd and Officer Tate fabricate records to keep him in confinement and that Lloyd, Tate, and Unit Manager Davis participate in periodic reviews of his status that are not meaningful, the plaintiff may proceed with this claim against Defendants Lloyd, Tate, and Davis.

### ii. Cruel and Unusual Punishment

Next, the plaintiff asserts a cruel-and-unusual-punishment claim. (Doc. No. 23 at 3.) As relevant here, the Eighth Amendment's prohibition on cruel and unusual punishment protects inmates from inhumane conditions of confinement and deliberate indifference to serious psychological needs. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (conditions of confinement); *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir. 2003) (psychological needs). The plaintiff, however, fails to state a claim on either basis.

These claims have objective and subjective components. The objective component of a conditions-of-confinement claims requires a plaintiff to allege "that he has been deprived 'of the minimal civilized measure of life's necessities.'" *Harden-Bey*, 524 F.3d at 795 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The objective component of a psychological-needs claim requires a plaintiff to demonstrate "that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 702–03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). And the subjective component for both claims is essentially the same: a plaintiff must show that a prison official was deliberately indifferent, meaning that he "kn[ew] of and disregard[ed] an excessive

risk to inmate health or safety," in that he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he [] also dr[e]w the inference." *Farmer*, 511 U.S. at 837; *Rhodes v. Michigan*, 10 F.4th 665, 673 (6th Cir. 2021) (quoting *Curry v. Scott*, 249 F/3d 493, 506 (6th Cir. 2001)) ("[A] plaintiff challenging the conditions of their confinement under the Eighth Amendment—whether based on inadequate medical care, a failure to protect the plaintiff from other inmates, or some other cognizable basis—'must show that the prison officials acted with "deliberate indifference" to a substantial risk [of] serious harm.'").

The plaintiff does not satisfy the objective component for a conditions-of-confinement claim. "In relation to the conditions of confinement, the Eighth Amendment only addresses 'deprivations of essential food . . . or sanitation' or 'other conditions intolerable for prison confinement.'" *Coleman v. Governor of Michigan*, 413 F. App'x 866, 875 (6th Cir. 2011) (quoting *Rhodes*, 452 U.S. at 348). To the extent that the plaintiff's allegations address these subjects, they are unsupported by facts. That is, the plaintiff alleges that he has received unsafe meals (including three breakfasts of oatmeal with mixed in glass), and that there is a sleep deprivation device in his cell. But the plaintiff does not provide any details about this alleged sleep deprivation device, and he does not allege that being served three unsafe meals deprived him of a basic human need. *See Richmond*, 450 F. App'x at 455 (citing *Wilson*, 501 U.S. at 304) ("[T]he totality of the circumstances do not otherwise implicate the prohibition against cruel and unusual punishment because [plaintiff] has not demonstrated that he was deprived of an identifiable human need in combination with his conditions of confinement."). Accordingly, the plaintiff has not alleged that his conditions of confinement are so inadequate as to violate the Eighth Amendment.

As for the psychological-needs claim, the plaintiff does not provide any detail of his mental condition aside from stating that RMSI staff describes him as experiencing paranoia and delusions.

9

The court assumes without deciding that this allegation, coupled with the well-documented mental anguish caused by solitary confinement as a general matter, is sufficient to satisfy the objective component of this claim for the purpose of initial review. *See Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 484 n.9 (6th Cir. 2020) (citing *Apodaca v. Raemisch*, 202 L.Ed.2d 251 (2018) (Sotomayor, J., writing respecting the denial of writ of certiorari)) ("The Supreme Court, as far back as 1890, has 'expressed concern about the mental anguish caused by solitary confinement.'"). However, the plaintiff does not actually allege that he has been denied psychological care by any of the named defendants, or, indeed, by anyone at the facility. The plaintiff, therefore, fails to satisfy the subjective component of a psychological-needs claim.

For all of these reasons, the plaintiff fails to state an Eighth Amendment claim based on his placement in solitary confinement.

### iii. Violation of TDOC Policy

The plaintiff asserts that his placement in solitary confinement violates TDOC policies and rules. (Doc. No. 23 at 7.) A prisoner cannot state a Section 1983 claim based solely on the failure to follow prison policies. *See Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)) ("Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest."). Thus, to the extent that the plaintiff brings an independent claim premised on the failure to follow policy, it will be dismissed.

### iv. Title VI

Finally, aside from the constitutional claims discussed above, the plaintiff asserts that his placement in solitary confinement violates Title VI of the Civil Rights Act of 1964. (Doc. No. 23 at 7.) Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. But the plaintiff does not make any allegations from which the court can reasonably infer that his initial or continued placement in confinement was due to his race, color, or national origin. Accordingly, the plaintiff fails to state a Title VI claim. *See Gilmore v. Corr. Corp. of. Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) ("A complaint must contain allegations respecting all the elements to sustain a recovery under some viable legal theory.").

### 3. Nonphysical Harassment

Notwithstanding his placement in confinement, the plaintiff also alleges that Sgt. Lloyd "influence[d] other officers to treat [the plaintiff] like a slave" and told the plaintiff he would "harass [the plaintiff] until [he] commit[s] suicide[]." The Sixth Circuit generally holds that "verbal abuse and nonphysical harassment of prisoners do not alone give rise to a constitutional claim" under the Eighth Amendment. *Small v. Brock*, 963 F.3d 539, 541 (6th Cir. 2020) (citing *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987)). Lloyd's alleged comment, however, is so extreme that it requires the court to consider the limits of this general statement of the law. In extraordinary circumstances, for example, nonphysical harassment may support an Eighth Amendment claim, such as where a prison guard makes multiple unprovoked threats to a prisoner's life and takes "concrete steps, such as aggressively brandishing a deadly weapon, to make those threats credible." *Id.* at 541–42 (collecting cases).

For the purpose of initial review, the court accepts that a threat of forced suicide is equivalent to a threat of homicide. But here, unlike in *Small*, the plaintiff does not allege that Sgt. Lloyd made similar threats on multiple occasions, nor does he allege that Lloyd took clear contemporaneous steps to make his threat credible. *See id.* at 540 (finding viable Eighth

11

Amendment claim where, on several occasions, a prison guard "brandished a knife, threatened to kill [the prisoner], and motioned in a manner suggesting how [the guard] would use the knife to kill [the prisoner]"). Accordingly, although the allegations are certainly troubling, Sgt. Lloyd's alleged nonphysical harassment of the plaintiff does not rise to the level of a constitutional violation. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (citing *Ivey*, 832 F.2d at 954–55) (holding that "harassment and verbal abuse," including "aggravating" and "insulting remarks," does "not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Williams v. Gobles*, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (citing *Ivey*, 832 F.2d at 955) ("[N]either verbal harassment nor threats constitute punishment within the context of the Eighth Amendment.").

### 4. Supervisor Defendants

The plaintiff appears to sue three defendants based purely on their positions as supervisors. This includes Interim TDOC Commissioner Helton, RMSI Warden Mays, and Associate Warden Lewis. "Section 1983 liability of supervisory personnel 'must be based on more than the right to control employees. . . . There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 579 (6th Cir. 2020) (quoting *Doe v. Claiborne Cnty.*, 103 F.3d 495, 511 (6th Cir. 1996)). "[T]he plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Here, after listing Helton and Mays as defendants, the plaintiff does not mention them by name in the body of the complaint. And his only mention of Lewis does not allege that Lewis

12

participated in any specific incident of misconduct. (Doc. No. 23 at 6 ("Defendant Warden Lewis as warden of security never took any action against any other person.")) Even under the liberal standards for pro se pleadings, that is insufficient to state a claim. *See Gilmore*, 92 F. App'x at 190 (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978)) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under [Section] 1983.").

The plaintiff does generally allege that the defendants, as a group, failed to address or investigate the issues raised in the complaint, despite the plaintiff's submitting numerous grievances on these issues. (Doc. No. 23 at 13.) However, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter*, 532 F.3d at 576 (quoting *Shehee*, 199 F.3d at 300); *Zakora v. Chrisman*, --- F. 4th ----, 2022 WL 3221596, at *14 (6th Cir. Aug. 10, 2022) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 873-74 (6th Cir. 1982)) ("A simple failure to act, without 'a showing of "direct responsibility" for the actions of the individual officers,' will not suffice to establish supervisory liability."). Similarly, any "claims premised on the mishandling of [] grievances" are subject to dismissal because there is "no constitutional right to an effective prison grievance procedure." *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (citations omitted). Accordingly, the plaintiff fails to state a claim against Defendants Helton, Mays, and Lewis.

### 5. Miscellaneous Remaining Claims

The plaintiff also makes several allegations that are simply too undeveloped to state a claim.[4] The first such allegation is that RMSI officials broke or damaged the plaintiff's personal

---

[4] The court does not consider the plaintiff to be bringing claims against the RMSI officials who are not named as defendants in the complaint, including Terry Foster (Doc. No. 23 at 7 (alleging service of oatmeal with glass in it)), Michael Carter (*id.* at 7 (alleging a shoulder bump)), Sergeant Castillo (*id.* (alleging

13

Case 3:21-cv-00666  Document 25  Filed 08/24/22  Page 13 of 18 PageID #: 599

property on a daily basis. The plaintiff does not provide any facts to support this claim, and besides, "[t]he unauthorized, intentional deprivation of a prisoner's property does not give rise to a due process claim if the state provides an adequate post-deprivation remedy," *Weatherspoon v. Woods*, No. 16-1277, 2017 WL 3923335, at *3 (6th Cir. Feb. 24, 2017) (citations omitted), as Tennessee does. *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985)).

Second, the plaintiff alleges that unnamed RMSI officials have engaged in an ongoing campaign to harass and retaliate against him (and other inmates) for refusing to participate in homosexual activity. Although the bare allegation at the heart of this claim is obviously unacceptable, it is similarly unsupported by facts, so it is simply too vague and conclusory to state a claim. *See*, 92 F. App'x at 190 (citing *Scheid*, 859 F.2d at 436) ("A complaint must contain allegations respecting all the elements to sustain a recovery under some viable legal theory.").

Third, the plaintiff alleges that he was attacked and treated differently for exercising First Amendment rights (Doc. No. 23 at 5), but again, he does not explain this allegation in any way. "A [prisoner's] conclusory allegations are insufficient to show that [a] defendant was motivated by the exercise of his First Amendment rights." *El-Shabazz v. Shands*, 23 F. App'x 402, 405 (6th Cir. 2001) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)); *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 377 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) ("These vague and conclusory allegations of nefarious intent and motivation by officials at the highest levels of the federal government are not well-pleaded, and are therefore insufficient to 'plausibly suggest an entitlement to relief.'").

---

planting a weapon near plaintiff)), Corporal Henry (*id.* at 8 (alleging encouragement of inmates to spray chemical in the plaintiff's cell)), and Officer Tuck. (*Id.* (same as Henry).)

14

Fourth and finally, the plaintiff alleges that the attacks listed in the complaint have interfered with his ability to mount a defense in his capital case. The plaintiff fails to state an access-to-courts claim on this basis, however, because he does not allege that his conditions of confinement caused him to suffer actual prejudice in an existing or anticipated case. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citations omitted) ("In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury. Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."). Moreover, the court takes judicial notice that the plaintiff has been represented by counsel at all stages of his state capital case. *See State v. Jones*, 568 S.W.3d 101 (Tenn. 2019) (affirming the plaintiff's convictions and death sentence on direct appeal); (Doc. No. 24 ¶ 2 (declaration reflecting that the plaintiff is represented by counsel in his ongoing state post-conviction proceedings).) This legal representation "is a valid means of satisfying the constitutional obligation to provide prisoners . . . with access to the courts." *Wylie v. Bonner*, No. 2:20-cv-02593, 2021 WL 261280, at *8 (W.D. Tenn. Jan. 26, 2021) (citing *Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004)); *see also Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991) (citations omitted) (emphasis in original) ("[A] prisoner's constitutionally-guaranteed right of access to the courts [is] protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, *or the assistance of legally trained personnel*.").

### 6. Official-Capacity Claims

The plaintiff brings this action against the defendants in their individual and official capacities. The individual-capacity claims have been addressed above. Official-capacity claims are equivalent to claims against the entity that a defendant represents. *See Alkire v. Irving*, 330

15

F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). Here, Interim Commissioner Helton represents the TDOC (Doc. No. 23 at 2), and as employees of RMSI, the other five defendants represent the TDOC as well. (*Id.* at 2–4); *see Young v. Hodge*, No. 3:12-0009, 2012 WL 5494892, at *5 (M.D. Tenn. Nov. 13, 2012), *report and recommendation adopted*, 2013 WL 440964 (M.D. Tenn. Feb. 5, 2013) (explaining that, unless they are affiliated with a private contractor, RMSI officials are employed by the TDOC).

The TDOC is an "agenc[y] of the state of Tennessee" that is "entitled to Eleventh Amendment immunity from suit for damages." *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (internal citations omitted). To the extent that the plaintiff requests monetary damages from the defendants in their official capacities, therefore, that request will be dismissed.

The plaintiff, however, requests declaratory and injunctive relief, including an "independent federal investigation" (Doc. No. 23 at 7), changes to RMSI policies and procedures on solitary confinement, relief from his present "prolonged and indefinite solitary confinement," and relief sufficient to address his "psychological and medical needs." (*Id.* at 11.) As an initial matter, this court cannot order a federal investigation. *See Martin v. Koljonen*, 89 F. App'x 567, 568 (6th Cir. 2004) ("Private citizens, whether or not they are prisoners, simply cannot compel a criminal investigation or prosecution against another." (collecting cases)). But the other requests for relief—a declaration, change in solitary confinement policy, relief from present confinement, and addressing psychological needs arising from this confinement—may proceed for further development. Interim Commissioner Helton will remain as a defendant in her official capacity only, so that a state official with authority to provide the requested relief is a party to this case in the event that the plaintiff demonstrates an entitlement to it. *See Boler v. Earley*, 865 F.3d 391,

16

412 (6th Cir. 2017) (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)) ("*Ex Parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations."). The official-capacity claims against the other defendants will be dismissed as redundant. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims).

## II.     Motion to Appoint Counsel

The plaintiff requests the appointment of counsel through a motion he refers to as a "renewed" version of a motion he filed in Case No. 3:19-cv-00795. (Doc. No. 22 at 1.) The plaintiff is advised that this case has not been combined or consolidated with Case No. 3:19-cv-00795, so anything the plaintiff files in this case will not be considered in Case No. 3:19-cv-00795. Likewise, anything the plaintiff files in Case No. 3:19-cv-00795 will not be considered in this case.

As for the plaintiff's request to appoint counsel in this case, "[t]he appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (citing *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993)). "To determine whether these exceptional circumstances exist, courts typically consider 'the type of case and the ability of the plaintiff to represent himself.'" *Id.* (citations omitted). Here, the plaintiff has shown an ability to communicate with the court, and after some difficulty, he has submitted a complaint that complies with Rule 8 and states a claim for relief. His lack of resources and legal knowledge are common to many prisoners, rather than exceptional. (*See* Doc. No. 22 at 1.) Accordingly, the plaintiff's request to appoint counsel will be denied without prejudice to renewal if he can demonstrate exceptional circumstances in the future.

## III. Conclusion

For these reasons, the plaintiff states individual-capacity due process claims against Defendants Lloyd, Tate, and Davis, arising from his alleged placement in solitary confinement since April 15, 2019. The plaintiff may also proceed with his requests for declaratory and certain injunctive relief (change in solitary confinement policy, relief from present confinement, and addressing psychological needs arising from this confinement) from Interim Commissioner Helton in her official capacity. These claims will be referred to the Magistrate Judge for further proceedings consistent with the accompanying order. All other claims and defendants will be dismissed.

ALETA A. TRAUGER
United States District Judge