**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HENRY LEE JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00666** |
| | ) | **Judge Aleta A. Trauger** |
| **TONY MAYS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM</u>**

Before the court is plaintiff Henry Lee Jones's "Motion to Strike Magistrate's Report and Recommendation" (Doc. No. 77), which the court construes as objections to the referenced Report and Recommendation ("R&R") (Doc. No. 74), which recommends that the defendants' Motion for Summary Judgment (Doc. No. 57) be granting and that the sole remaining claim in this case be dismissed with prejudice.

For the reasons set forth herein, the construed objections will be overruled; the R&R will be accepted in its entirety; the defendants' Motion for Summary Judgment will be granted; and this case will be dismissed.

## I.     STANDARD OF REVIEW

After being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with

instructions." *Id.*

However, the district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety" of a magistrate judge's report and recommendation has the same effect as a complete failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## II.    BACKGROUND

Jones, an inmate on death row at Riverbend Maximum Security Institution ("RMSI"), brings this suit *pro se*. As explained by the Magistrate Judge, the only claim that remains pending in this case is a due process claim against three individual defendants, based on the plaintiff's alleged continued placement in solitary confinement, and an official-capacity claim against the

Commissioner of the Tennessee Department of Correction ("TDOC") seeking declaratory relief and certain injunctive relief related to the same alleged solitary confinement. (*See* Doc. No. 25, at 6–8, 15–17.) As discussed in greater detail by the Magistrate Judge in the R&R, Jones alleges that he was accused in April 2019 of committing a prison disciplinary infraction by assaulting another inmate. He alleges that he did not receive a disciplinary hearing and was not actually convicted of a disciplinary offense but was nonetheless placed in what he terms "solitary confinement" on or about April 15, 2019, and he remained in that housing status for 40 to 44 months. He alleges that the defendants falsified records to justify keeping him in solitary confinement and that they did not provide meaningful review of his restricted housing status.

The defendants seek summary judgment as to the plaintiff's due process claim related to his placement. (Doc. No. 57.) In support of their motion, the defendants filed a Memorandum of Law (Doc. No. 59), Statement of Undisputed Material Facts (Doc. No. 58), the Declaration of Zachary Pounds, then Warden of RMSI, with attached exhibits (Doc. No. 58-1), and a transcript of the plaintiff's deposition (Doc. No. 58-3). After being directed to do so by the Magistrate Judge, the defendants also filed a Supplemental Memorandum of Law, Supplemental Statement of Undisputed Material Facts, and Supplemental Declaration of Zachary Pounds, with exhibits. (Doc. Nos. 69, 70, 70-1.) The plaintiff responded to the motion with numerous miscellaneous filings, raising a variety of arguments and attaching as exhibits copies of various prison documents, but he did not respond to the defendants' Statements of Undisputed Material Facts. (*See* Doc. Nos. 61–65, 72.)

In support of the Motion for Summary Judgment, the defendants contend that the undisputed facts establish that, in accordance with TDOC policy, Jones and all inmates on death row are classified as maximum security inmates, are assigned to mandatory segregated

confinement, and are placed into one of three program "levels"—Level A, B, or C—which correspond with progressively more restrictive limitations on an inmate's institutional activity. Program Level C is the most restrictive level, and Program Level A is the least.[1] (*See* TDOC Policy 503.03, Effective March 15, 2018, Doc. No. 70-1, at 11–12.) All new inmates on death row start at Program Level C and remain there for a set period of time before being considered for move to the next level. (*Id.* at 9.) A Unit Review Panel meets every 30 days to review each inmate's program level and make recommendations to the unit manager regarding any movement between program levels, based on such factors as the inmate's disciplinary record, criminal activity while incarcerated, record of violent reactions to stressful situations, compatibility with other inmates, personal hygiene, and psychiatric and medical records, among others. (*Id.* at 9–10.)

Jones was moved from Level A to Level C in April 2019 after being accused of striking another inmate in the face, moved from Level C to Level B in November 2020, from Level B to Level A in January 2022, and then back to Level B in February 2022.[2] (Doc. No. 70-1, Pounds Decl. ¶¶ 19–21.) Because the plaintiff did not respond to the defendants' Statements of Undisputed Material Facts, and the defendants' factual assertions are adequately supported with citations to the factual record, the Magistrate Judge accepted the defendants' facts as true.

The Magistrate Judge, based on the undisputed facts, concluded that the plaintiff failed to show that he had a protected liberty interest in his program level placement. Notably, the plaintiff's

---

[1] Inmates in Level C are entitled to receive individual exercise, counseling, and education, legal assistance, and non-contact visitations twice a week, but are generally confined to their cells and are required to be restrained when out of their cells. Level B inmates may participate in small group activities, longer non-contact visits, and may have their restraints removed when out of their cell at the discretion of the unit manger. Level A inmates may be considered for jobs and are permitted to participate in group activities, to receive contact visits, to move freely in and out of their cells without restraints. (*See* TDOC Policy 503.03, Effective March 15, 2018, Doc. No. 70-1, at 11–12.)

[2] By May 20, 2024, Jones had been moved back to Program Level A. (Doc. No. 70-1 ¶ 25.)

placement in a particular program "level" is not the same as his security classification, as all inmates on death row are classified as maximum security. As the Magistrate Judge explained, to establish that a placement in restrictive housing implicates due process, the plaintiff must show that the placement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (Doc. No. 74, at 10 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).) In the instant case, the plaintiff failed to show such an atypical and significant hardship, as the duration of his placement on Program Level C was not sufficiently lengthy or indefinite to implicate a protected liberty interest; death-sentenced inmates are "routinely placed in Program Levels C and B," making the plaintiff's placement in Program Level C typical rather than atypical; the placement on Program Level C was not so isolating or extreme that the conditions associated with the placement can be viewed as significant and atypical in relation to the ordinary incidents of prison life; and the placement did not impact the plaintiff's eligibility for parole or release, since he has no possibility of release or parole. (*Id.* at 10–12.)

The Magistrate Judge also noted that the plaintiff's assertion that prison officials were required to have pursued prison disciplinary procedures and convicted him of an offense before moving him to Level C is simply incorrect, as the decision to "address Plaintiff's assault on another inmate through a non-disciplinary placement in Level C is the type of decision regarding the day-to-day management of prison inmates that falls squarely within the discretion of those officials." (*Id.* at 12.) Because the decision is discretionary, it is "not subject to procedural due process scrutiny." (*Id.*)

The plaintiff's claim is that the defendants violated his right to procedural due process under the Fourteenth Amendment by placing him in solitary confinement for a lengthy period of time without providing him with a hearing and a proper review process. Upon review of the factual record as a whole and a comprehensive examination of the applicable law, the Magistrate Judge concluded

that the plaintiff failed to show that he suffered an infringement of any protected liberty interest protected by the Due Process Clause or that he was denied procedural protections due to him under the Fourteenth Amendment. The Magistrate Judge recommends that the defendants' motion be granted.

In his construed objections to the R&R, the plaintiff asserts that:

(1) the R&R is "clearly and obviously wrong," insofar as it "fails to recognize that the plaintiff's liberty interest[] actually exists" (Doc. No. 77 ¶ 1);

(2) the "undisputed facts" show that he was placed in solitary confinement in April 2019 after being accused of assaulting another inmate and remained in "solitary confinement" for 40–44 months (*id.* ¶ 2);

(3) the R&R "suspiciously" fails to reference two TDOC policies—TDOC Policy 502.01 (governing disciplinary proceedings), and TDOC Policy 401.08 (governing "Annual Reclassification")—that the plaintiff believes are relevant to the defendants' conduct and create a "genuine issue of fact" as to whether the plaintiff has a protected liberty interest at stake (*id.* ¶¶ 3, 6, 8, 12);

(4) the Magistrate Judge erred in stating that the plaintiff was incorrect in believing that "prison officials must have convicted him of a disciplinary offense to have moved him from Level A to Level C," and, according to the plaintiff, the prison official defendants abused their discretion when they decided to "address Plaintiff's assault on another inmate through a non-disciplinary" placement-level change, rather than proceeding through the disciplinary process (*id.* ¶¶ 4–5);

(6) the plaintiff received a disciplinary write-up under Policy 502.01, but the charge was set aside and invalidated, so the decision to change his placement based on the same alleged incident constitutes double jeopardy in violation of the Fifth Amendment and was done solely to "vex, harass and take advantage of, and/or deceive the plaintiff" (*id.* ¶¶ 7–10);

(7) Zachary Pounds (on whose Declaration the defendants rely in support of their Motion for Summary Judgment) was not even employed at RMSI in May 2019 and therefore had no first-hand knowledge of the events in question (*id.* ¶ 11);

(8) the change in placement violated TDOC's own procedures pertaining to Annual Reclassification set forth in TDOC Policy 401.08 and violated Tenn. Code Ann. § 41-21-202, implicated a liberty interest under the Fourteenth Amendment, violated *Sandin* (*id.* ¶ 12);

(9) the R&R incorrectly states that the plaintiff's placement level change was an "ordinary incident of Tennessee prison life" when it clearly "amount[ed] to atypical

and significant hardship without a legitimate penological interest" (*id.* ¶¶ 11, 13, 17); and

(10) the R&R shows that the "security classification objective standard has been illegally overridden by the judiciary under martial law," resulting in the plaintiff's misclassification (*id.* ¶¶ 14–16).

(Doc. No. 77, at –9.)

The defendants' Response to the Motion to Strike (Doc. No. 83) emphasizes that, based on the undisputed facts, the plaintiff's *classification* level never changed. Instead, his program level assignment within the classification changed after he (allegedly) assaulted another inmate. The defendants maintain that the Magistrate Judge correctly concluded that the level change did not implicate the plaintiff's due process rights, because he has no protected liberty interest in the level placement within his security classification, and the plaintiff has failed to show that the change in level amounted to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (*Id.* at 6 (quoting *Sandin*, 515 U.S. at 486–87).)

Regarding the plaintiff's specific objections, the defendants argue that the plaintiff's reference to TDOC Policy 502.01 is irrelevant to whether he has a protected liberty interest in a particular program level, that the Policy does not implicate the *Sandin* factors, and that the plaintiff is simply mistaken in continuing to argue that his movement to Program Level C was the result of a disciplinary action as opposed to the Unit Manager's discretion. They also point out that Pounds's Declaration cites to specific evidence supporting why the plaintiff was moved. (*Id.* at 10.) Generally, the defendants contend that the plaintiff's objections amount to misstatements of the facts and reliance on completely irrelevant TDOC Policies. They assert that the court should adopt the R&R and dismiss the plaintiff's remaining claim.

### III.     DISCUSSION

Even assuming that the plaintiff's objections are sufficiently specific to be considered on the merits, the court, in short, is not persuaded. Insofar as the plaintiff now attempts to take issue with the Magistrate Judge's factual findings, the plaintiff did not respond to the defendants' Statements of Undisputed Material Facts and cannot establish that the Magistrate Judge erred in accepting as true the defendants' statement of the facts. *See* L.R. 56.01(f) ("If a timely response to a moving party's statement of material fact . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.").

The plaintiff's first objection does not meaningfully call into question the Magistrate Judge's conclusion that the facts as alleged here fail to establish a violation of a protected liberty interest, for purposes of the plaintiff's Fourteenth Amendment claims. The plaintiff has failed to show that his change in program level placement amounts to "intentional[] and wanton[] punish[ment]" or amounts to an "atypical and significant hardship without a legitimate penological interest. (Doc. No. 77, at 4, 8.) The plaintiff's allegation that he was in "solitary confinement" without adequate process for more than 40 months is conclusively refuted by the factual record. TDOC Policy 502.01, governing disciplinary proceedings, has no relevance here, as the plaintiff's placement in program Level C in April 2019 was governed by Policy 503.03. TDOC Policy 401.08 is likewise irrelevant, because Jones has not actually alleged that his security classification ever changed or that the annual review was not conducted as required.

Zachary Pounds's ability to submit a Declaration based on personal knowledge is not affected by the fact that he was not RMSI Warden in 2019, because his factual allegations consist largely of verifying the policies in effect and the documents in the record pertaining to the plaintiff's program level placement. And the plaintiff's claim that his program placement violated

double jeopardy is outside the scope of the remaining due process claim in this lawsuit, as is his assertion that the placement violated state law.

The objections, in sum, are entirely without merit, first, because they fail to show that any specific finding of fact by the Magistrate Judge is in error or is unsupported by the factual record. Again, the plaintiff did not respond to the defendants' Statements of Undisputed Material Fact, and, even now, the plaintiff has not effectively refuted the defendants' facts regarding the applicable policies and the implementation of those policies in the plaintiff's case. Second, the plaintiff has not shown that the R&R contains any legal error, misstates the applicable legal principles, or misapplies the law to the facts of this case.

The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of "life, liberty, or property" without due process. U.S. Const. amend. XIV. "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Generally, a prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will "inevitably" affect the duration of an inmate's sentence or inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487. In addition, the Sixth Circuit has repeatedly recognized that inmates generally "lack protected liberty interests in avoiding administrative segregation." *Finley v. Huss*, 102 F.4th 789, 812 (6th Cir. 2024) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995)). Administrative segregation, like other forms of punishment, can still implicate a liberty interest when it "imposes atypical and significant hardship." *Id.* at 813 (quoting *Sandin*, 515 U.S. at 484); *Harden-Bey v. Rutter*, 524 F.3d 789, 792–95 (6th Cir. 2008) (three-year confinement in administrative segregation could constitute an "atypical and significant hardship"). As the Magistrate Judge recognized, courts consider both the duration and the nature of the more

restrictive confinement, with reference to the "conditions experienced by a relatively broad swath of inmates." *Id.*

The plaintiff cannot make the requisite showing here. He was not placed in punitive segregation, administrative segregation, or solitary confinement. (*See* Doc. No. 70-1, Pounds Decl. ¶ 22.) He was reassigned to Program Level C in April 2019, after allegedly striking another inmate, for a period of approximately 19 months, before being moved to Program Level B. Jones's assignment to Program Level C was not extraordinarily long. The proof advanced by the defendants establishes that movement among the program levels by inmates on death row is an ordinary incident of prison life, not punitive, and that placement in Program Level C or B does not amount to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"—particularly prison life as experienced by inmates on death row at RMSI. The defendants are entitled to summary judgment on the plaintiff's due process claim.

## IV. CONCLUSION

For the reasons set forth herein, the plaintiff's Motion to Strike will be construed as objections to the R&R, and the objections therein will be overruled. The court will accept and adopt the R&R in its entirety, and the Motion for Summary Judgment as to the sole remaining claim in this case will be granted. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge